# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PENNMONT SECURITIES, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 06-1646 |
| | : | |
| v. | : | |
| | : | |
| JOHN F. WALLACE, | : | |
| MEYER FRUCHER, and | : | |
| PASQUALE DIDONATO, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S.J.                                                        March 26,  2008

Presently before the Court are Defendant Pasquale DiDonato's Motion for Summary Judgment (Docket No. 61), Defendants John F. Wallace and Meyer Frucher's Motion for Summary Judgment (Docket No. 59), Plaintiff Pennmont Securities' Answer in Opposition (Docket No. 63), Defendant DiDonato's Reply (Docket No. 65), and Defendants Wallace and Frucher's Reply (Docket No. 64).  For the reasons stated below, the Motions for Summary Judgment are **GRANTED** and judgment is entered in favor of all Defendants and against Plaintiff.

## I.  BACKGROUND

In January 2004, the Philadelphia Stock Exchange ("PHLX") converted from a mutual organization to a stock corporation by way of a process called demutualization. (Defs.' Frucher and Wallace's Mem. Law Supp. Mot. Sum. J., Ex. C)  Members of the former organization—known as seat owners—became shareholders, each seat converting to 100 shares

that could be sold on a private exchange.  Plaintiff, Pennmont Securities, a corporation, owned several such seats, each of which converted to 100 shares through the demutualization process. (See Carapico Dep. 7:10-10:24, Oct. 9, 2007.)

   The stated purpose of the PHLX's demutualization was to make the organization better able to pursue outside investors. (See Frucher and Wallace's Mem. Supp. Mot. Sum. J., Ex. C.)  This purpose was well known to Pennmont's principals. (See Carapico Dep. 75:21-76:9, Oct. 9, 2007; Feinberg Dep. 24:23-25:20, Oct. 30, 2007; Snyder Dep. 21:10-22:3, Oct. 30, 2007.) The company's Chairman and CEO, Defendant Frucher, indicated that the company could not compete without the ability to enter into strategic partnerships, a prospect that was hampered by the PHLX's position as a mutual organization. (Wallace & Frucher's Mot. Dismiss Pl.'s Am. Compl., Ex. A, at 9.)  Evolving technology and the worsening financial picture of the PHLX were said to necessitate demutualization, which would facilitate a new infusion of capital. (Id. at 11, 13, 23, 27.)

   After demutualization, the PHLX began to carry out these plans.  In November 2004, the PHLX entered discussions with Archipelago Holdings LLC ("Archipelago") about a strategic partnership. (Frucher Dep. 56:14-58:12, Oct. 10, 2007.)  Sometime in April 2005, Archipelago offered fifty million dollars in cash and stock to acquire the entire PHLX, an offer that was rejected. (Am. Compl., Ex. A.)  The PHLX also had discussions with Citadel Derivatives Group LLC ("Citadel") beginning in the fall of 2004, but according to Defendant Frucher, these discussions were preliminary. (Frucher Dep. 61:8-62:20.)

   No confirmed deals were reported until June 16, 2005, when the PHLX announced that Merrill Lynch and Citadel each had acquired a ten percent stake in the PHLX,

with a possible option to double its interest. (Frucher and Wallace's Mem. Supp. Mot. Sum. J., Ex. P.)  On August 16, 2005, the PHLX announced that Morgan Stanley had acquired ten percent of the PHLX for $7.5 million, and that Citigroup, Credit Suisse First Boston, and UBS each acquired five percent for $3.75 million. (Am. Compl., Ex. C.)  Each of these companies also retained a possible option to double its stake. (Id.)

Meanwhile, on January 4, 2005—after the PHLX had begun partnership discussions, but before any deals were consummated or announced—Pennmont sold 100 shares to Defendant DiDonato for $30,000.  DiDonato had been a long-time trader on the PHLX floor, but was not an employee or Board member. (See DiDonato Dep. 4:14-16, Nov. 2, 2007.) DiDonato claims that he made the trade because he had read earlier in the day, in a New York Times article, that the PHLX was a potential acquisition target of Archipelago. (Id. at 17:15-22; Frucher & Wallace's Mem. Sup. Sum. J., Ex. B)  DiDonato was also aware that the stated purpose of demutualization was to find strategic partners; now that he thought there was outside interest, he jumped at the chance to buy the stock. (Id. at 75:15-17.)  It is undisputed that DiDonato's decision to buy was a profitable one.  One hundred block shares of the PHLX traded at $110,000 in mid-August 2005. (Am. Compl., Ex. 1.)

Plaintiff brings securities fraud claims under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b-5, 17 C.F.R. § 240.10b-5 promulgated thereunder, against DiDonato, Frucher, and Wallace, the Vice Chairman at the PHLX at the time of the transaction.  Plaintiff claims in Counts I and II that DiDonato is liable for insider trading because he failed to disclose material nonpublic information before making the trade.  In Count III, Plaintiff claims that Wallace, as an insider to the PHLX, is liable for wrongfully providing

material nonpublic information to DiDonato.  And in Count IV, Plaintiff claims that Frucher committed securities fraud by making false and misleading statements that depressed the sale price of the PHLX's stock.

## II.  LEGAL STANDARD

A motion for summary judgment will be granted where all of the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Because a grant of summary judgment will deny a party its chance in court, all inferences must be drawn in the light most favorable to the party opposing the motion. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Where, as here, the burden of proof is on the nonmoving party, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex v. Catrett, 477 U.S. 317, 325 (1986).  For the nonmoving party to then satisfy its burden, it must set forth specific facts, and may not rely on "bare assertions, conclusory allegations or suspicions." Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).

The ultimate question in determining whether a motion for summary judgment should be granted is "whether reasonable minds may differ as to the verdict." Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 129 (3d Cir. 1998).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

4

## III.  DISCUSSION

Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 create the overall liability scheme for securities fraud.  Section 10(b) provides,

> It shall be unlawful . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities Exchange Commission (SEC)] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j.  Rule 10b-5, promulgated by the SEC to enforce section 10(b), provides a private cause of action.  Rule 10b-5 makes it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading . . . ." 17 C.F.R. § 240.10b-5.

In order to maintain a securities fraud claim under Rule 10b-5, a plaintiff "must show that the defendant (1) made a misstatement or an omission of a material fact (2) with scienter (3) in connection with the purchase or the sale of a security (4) upon which the plaintiff reasonably relied and (5) that the plaintiff's reliance was the proximate cause of his or her injury." In re Ikon Office Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002).  Each of Plaintiff's security fraud claims will be considered under this framework.

### A.  Count III:  Insider Trading Tipper Liability Against Defendant Wallace

In Count III, Plaintiff alleges that John F. Wallace, as Vice Chairman of the PHLX, disclosed material nonpublic information to Defendant DiDonato, and thereby is liable to Plaintiff for losses resulting from the transaction.  Because Plaintiff has consented to summary

judgment on Count III, the Court need not consider the merits of this claim. (See Pl.'s Answer

Opp'n 4-5 ("In short, while Wallace's claims of total ignorance are highly implausible, without

something more it is not possible to overcome his . . . [d]efense."); id. at 16 ("Plaintiff consents

to the motion to enter summary judgment in favor of defendant John F. Wallace.").  Therefore,

judgment is entered in favor of Defendant Wallace, and against Plaintiff, on Count III.

### B.  Counts I and II:  Insider Trading Tippee Liability Against Defendant DiDonato

In Counts I and II, Plaintiff alleges that Defendant DiDonato traded with Plaintiff

without disclosing inside information he received from Defendant Wallace.  Under Plaintiff's

insider trading theory, DiDonato is liable as a so-called tippee, meaning he wrongfully traded on

the basis of inside information given to him by an insider, the so-called tipper.

In a securities fraud claim such as this one, where the plaintiff alleges that an

omission is the basis for liability, the plaintiff must show that the defendant had a duty to

disclose the alleged inside information before trading with the plaintiff. See Oran v. Stafford, 226

F.3d 275, 285-86 (3d Cir. 2000).  "[A] tippee assumes a fiduciary duty to the shareholders of a

corporation not to trade on material non-public information only when the insider has breached

his fiduciary duty to the shareholders by disclosing the information to the tippee and the tippee

knows or should know that there has been a breach." Dirks v. SEC, 463 U.S. 646, 660 (1983).

Further, unless " 'the insider personally will benefit, directly or indirectly, from his disclosure,'

there is no breach of fiduciary duty in the disclosure and, therefore, no derivative breach for the

tippee." United States v. Heron, No. 06-674-01, 2007 WL 4463580, at *4 (E.D. Pa. Dec 19,

2007) (quoting Dirks, 463 U.S. at 662).  Therefore, to survive summary judgment on Counts I

6

and II, Plaintiff must provide evidence that DiDonato received material information from an insider who stood to benefit from the disclosure.[1]

Plaintiff has failed to do so.  As discussed in the preceding section, Plaintiff now admits that it can offer no evidence that Wallace, the alleged tipper, in fact gave any information to DiDonato.  In an attempt to save the tippee claim, Plaintiff now supplements the complaint, stating, "Wallace is not the only possible tipper to DiDonato as it could have been Benton or some other person possessing inside information." (Pl.'s Answer Opp'n 4.)  In this single statement, not only does Plaintiff admit to having no evidence as to a particular tipper, but also admits to having no evidence of any particular information, let alone material information, that was the substance of the tip.  These musings are just that; they stand on just the kind of bare speculation that the Court cannot allow to withstand a motion for summary judgment.

Not surprising perhaps, Plaintiff now offers an entirely new theory of liability against Defendant DiDonato.  Plaintiff claims that the stock sale to DiDonato was voidable because it violated section 29(b) of the Exchange Act.  Section 29(b) provides,

> Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, . . . [or] the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void.

15 U.S.C. § 78cc(b).  "Section 29(b) itself does not define a substantive violation of the securities laws; rather, it is the vehicle through which private parties may rescind contracts that were made or performed in violation of other substantive provisions." Berckeley Inv. Group, Ltd.

---

1.   A tippee may also be held liable for trading on information received from a non-insider tipper, but only if the non-insider tipper has misappropriated the inside information and the tippee knows or has reason to know that the information was misappropriated. See Stevens v. O'Brien Envtl. Energy, Inc., No. 94-4577, 1999 WL 310550, at *2 (E.D. Pa. May 10, 1999).  Here, there is no allegation that a tipper misappropriated inside information.

v. Colkitt, 455 F.3d 195, 205 (3d Cir. 2006).  Thus, in order to survive a motion for summary

judgment, Plaintiff must establish a predicate violation of the securities laws and offer some

evidence by which a reasonable fact finder could conclude that the defendant violated such laws.

Before even considering the substance of the section 29(b) claim, however, the

Court must dismiss it as improperly brought.  The Third Circuit recently remarked, "District

Courts have broad discretion to disallow the addition of new theories of liability at the eleventh

hour." Carr v. Gillis Associated Indus., Inc, 227 Fed. Appx. 172, 176 (3d Cir. 2007).  As another

court explained, "Plaintiff's counsel cannot reasonably expect to amend the complaint after the

close of discovery merely by raising new arguments in the responsive papers." Speziale v.

Bethlehem Area School District, 266 F. Supp. 2d 366, 371 n.3 (E.D. Pa. 2003) (cited in Carr, 227

Fed. Appx. at 176); see also OTA P'ship v. Forcenergy, Inc., 237 F. Supp. 2d 558, 561 n.3 (E.D.

Pa. 2002).  Neither the Complaint nor the Amended Complaint make any mention of a violation

of section 29(b).  Therefore, the claim is dismissed.

Even assuming that Plaintiff did properly raise the claim, Plaintiff has failed to

establish a predicate violation of the securities laws.  Plaintiff claims that there were two

underlying violations:  first, DiDonato was not a qualified investor as required by law in order to

participate in a private stock offering; second, DiDonato failed to follow the PHLX's Code of

Conduct governing when and how an insider may purchase shares. (Pl.'s Answer Opp'n 7-10.)

These claims are flawed for numerous reasons.  Initially, Plaintiff makes no effort to specify what

securities laws were violated by these alleged acts.  As DiDonato points out, such an omission

makes it nearly impossible to analyze the claim. (See Reply Supp. Def. DiDonato's Mot. Sum. J.

2-3.)  Further, even assuming that, if proven, these alleged actions violated the securities laws,

Plaintiff fails to point to any facts that establish either of the two allegations.[2]  As to the first, Plaintiff states, "From the documents Plaintiff was shown during the course of discovery, DiDonato was not a qualified investor at the time [he] purchased the stock from Plaintiff." (Pl.'s Answer Opp'n 8.)  The Court is left to wonder what documents those might be.  To defeat a motion for summary judgment, a plaintiff must point to specific facts . Fed. R. Civ. P. 56(e)(2).  Plaintiff has failed to do so.  The same can be said of the second alleged violation, that DiDonato failed to comply with the Code of Conduct.  Plaintiff cites neither any securities law requiring that a company's Code of Conduct be followed, nor any specific provision of the Code of Conduct, let alone any specific provision that was violated.  For all these reasons, Plaintiff's 29(b) claim is without merit, and judgment is entered in favor of Defendant DiDonato and against Plaintiff on Counts I and II.

### C.  Count IV: Defendant Frucher's Material Misstatements[3]

In the Amended Complaint, Plaintiff's only claim against Defendant Frucher is brought under section 10(b) of the Exchange Act and Rule 10b-5.[4]  Plaintiff alleges that Frucher

---

2.   In its discussion of Counts I and II against Defendant DiDonato, Plaintiff fails to offer a single citation to the record and cites no law to establish a predicate violation of the securities laws. (See Pl.'s Answer Opp'n 1-5, 7-10.) These inexcusable omissions leave the Court little choice but to grant DiDonato's Motion for Summary Judgment.

3.   In addition to the arguments on the merits considered in this section, Defendants Frucher and Wallace contend that a class action settlement entered into and approved by the Delaware Chancery Court is a bar to Plaintiff litigating the claim here. (See Frucher & Wallace's Mem. Supp. Mot. Sum. J. 25-32.)  Because the Court will enter judgment on the merits against the Plaintiff on all counts, we need not address this issue.  However, the Court notes that the Order and Judgment approving the release states that the class consisted of "all class A common stockholders of the . . . [PHLX], on April 20, 2005, and their transferees or successors in interest through June 20, 2007 . . . ." (Ginsburg v. Phila. Stock Exch., Inc. et al., No. 2202, ¶ 4 (Del. Ch. Oct. 22, 2007).  The stock in question here was sold by Plaintiff on January 4, 2005.  Thus, as to this stock, Plaintiff was not a member of the class, and the release has no bearing on any claim brought in relation to the January 4, 2005, transaction.

4.   Once again, Plaintiff has attempted to add new claims in responsive papers.  Plaintiff now asserts that Frucher's "failure to disclose" and failure to "hav[e] procedures in place to monitor corporate activity or to prevent illegal activity" constitute additional violations of Delaware state law. (Pl.'s Reply 14.)  As discussed in Part III.B, supra,

(continued...)

made false and misleading statements designed to depress the value of the PHLX's stock.  The

Amended Complaint suggests that Defendant Frucher is liable both as an aider and abettor to

Defendant DiDonato and as a primary violator. (Am. Compl. 74-76.)  The first contention is

easily dispensed with—there is no separate private liability for aiding and abetting under Rule

10b-5. Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 191

(1994) ("[W]e hold that a private plaintiff may not maintain an aiding and abetting suit under §

10(b).").  To the extent that Count IV relies on such a theory, it is dismissed.

   As to Frucher being a primary violator, Plaintiff must set forth facts from which a

reasonable factfinder could conclude that all of the elements of a 10b-5 claim have been met. See

In re Ikon Office Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002) (listing the elements of a 10b-

5 claims as (1) misstatement of material fact; (2) scienter; (3) connection with a security

transaction; (4) reliance; and (5) causation); see also Winer Family Tr. v. Queen, 503 F.3d 319,

326 (3d Cir. 2007) (same).

   Plaintiff has failed to satisfy any of these elements.  In the Amended Complaint,

the only material misstatements Plaintiff identifies are Frucher's "denials about ongoing

inquiries" regarding rumored negotiations. (Am. Compl. ¶ 74.)  And the only specific denial

Plaintiff references is the "Denial Memo," a release authored by Frucher and sent to the PHLX

community on January 7, 2005. (Id. ¶ 70.)  Frucher's alleged misstatements are summed up in the

following paragraph of the Amended Complaint:

> At all times relevant hereto and before issuing the Denial Memo,
> defendant Frucher had responded to those persons inquiring on the rumors that the

---

4. (...continued)
the Court will not entertain last minute claims brought for the first time in responsive papers.

PHLX was negotiating a "deal" by verbally denying the fact of ongoing negotiations and answering that while the PHLX was seeking "strategic partners" with, or "investors" in, the PHLX, any such discussions were merely informal conversations and not of any substance or imminent.

(Id. ¶ 71.)  Some fourteen months after filing the Amended Complaint, and after many months of discovery, Plaintiff has not fleshed out in any detail the specific statements that were supposedly false and misleading.  The only specific statement Plaintiff's Opposition to Summary Judgment refers to is the so-called Denial Memo.  However, the Denial Memo was issued on January 7, 2005, two days after the stock transaction in question.  Therefore, Plaintiff obviously could not have relied on it in making the January 4, 2005, transaction at issue here.

Plaintiff provides no evidence of any other specific denials.  But even if there were such evidence, Plaintiff has cited nothing to support the contention that these alleged denials were false.  In fact, all of the evidence suggests that they were truthful.  According to Frucher's deposition testimony, while preliminary discussions took place in the fall of 2004 with Archipelago and Citadel about a possible partnership, these were not "negotiations."  They were preliminary discussions, and no specific proposals were exchanged until much later. (Frucher Dep. 56:24-58:12; 61:20-62:20.)  Plaintiff has provided nothing to discount Frucher's testimony.  There is simply no evidence that advanced negotiations to sell the exchange had taken place as of January 4, 2005, the date of the transaction at issue.  Thus, Plaintiff has failed to establish a genuine issue of material fact regarding whether Frucher's denials were misleading.

Even if we assumed that Frucher made specific denials that material negotiations were ongoing before the trade and that these denials were misstatements, there is still a complete absence of proof of scienter.  This Court recently outlined how a Plaintiff must establish scienter:

> To establish [scienter], a plaintiff must plead facts that either (1) constitute circumstantial evidence of either reckless or conscious behavior or (2) establish a "motive and opportunity" to commit fraud. In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 276 (3d Cir. 2006).
>
> . . . .
>
> In Tellabs, Inc. v. Makor Issues & Rights, Ltd., the Supreme Court recently took up the question of scienter.[5] 127 S. Ct. 2499 (2007).  The Court stated that there must be a strong inference of scienter drawn from all the facts, and, additionally, that "the court must take into account plausible opposing inferences." Id. at 2509.  The Court held that the inference of scienter must be "at least as compelling as any opposing inference one could draw from the facts alleged." Id. at 2510.

Feinberg v. Benton, No.  05-4847, 2007 WL 4355408, at *5-6 (E.D. Pa. Dec. 13, 2007).

There is simply no evidence here of recklessness or conscious behavior in connection with this transaction, nor is there any motive developed by Plaintiff for Frucher's activity.  Plaintiff has not alleged, let alone proven, that Frucher in any way benefitted from the transaction between DiDonato and Plaintiff.  Plaintiff has submitted no evidence that Frucher had any connection to DiDonato.  In fact, once again, Plaintiff has failed to cite to any evidence in the record.  Moreover, DiDonato's explanation for why he bought the stock when he did—that he had read of rumors about possible interest in the PHLX in the New York Times—discounts any inference of an improper motive by Frucher with regard to this transaction.

---

5.   As this Court noted in Feinberg,

> Tellabs considered scienter in the context of a motion to dismiss and in light of the pleading requirements for a securities fraud claim imposed by the Private Securities Litigation Reform Act (PSLRA).  At least one circuit has found that the PSLRA's requirements do not change the substantive elements of a 10(b) claim and therefore that the cases interpreting the PSLRA are not controlling when deciding motions for summary judgment. See Howard v. Everex Sys., Inc., 228 F.3d 1057, 1064 (9th Cir. 2000) ("Because the PSLRA did not alter the substantive requirements for scienter under § 10(b), however, the standard on summary judgment . . . remains unaltered . . . .").  Without weighing in on whether this conclusion is correct, this Court believes the Tellabs analysis is at least instructive in the summary judgment context.

Feinberg, No.  05-4847, 2007 WL 4355408, at *6 n.1 (E.D. Pa. Dec. 13, 2007).

Finally, without proof of any material misstatements or scienter, Plaintiff also has failed to establish reliance and causation.  Thus, Plaintiff has failed to establish a case for securities fraud against Frucher.

Once again, Plaintiff has attempted to shift its theory, now arguing that Frucher should be held liable because he did not affirmatively disclose to the shareholders the state of negotiations and the true value of the PHLX.[6]  (See, e.g., Pl.'s Reply Opp'n 14 ("Frucher took no steps to correct the belief held by sellers that the PHLX was in dire financial straits.").   But this new theory would be based on an omission rather than an affirmatively misleading statement.  As discussed earlier, in order for an omission to be the basis of liability in a 10b-5 claim, the defendant must have a duty to disclose the information.  See Oran v. Stafford, 226 F.3d 275, 285-86 (3d Cir. 2000).   The Third Circuit recently explained that "[a]s a general matter, an affirmative duty arises only when there is insider trading, a statute requiring disclosure, or an inaccurate, incomplete, or misleading prior disclosure." Winer Family Tr. v. Queen, 503 F.3d 319, 329 (3d Cir. 2007) (citing Oran, 226 F.3d at 285-86).  Here, Frucher owed no such duty to Plaintiff because he was not trading with Plaintiff; Plaintiff has cited no duty statutorily imposed on Frucher to disclose; and there is no evidence that Frucher had made prior misleading statements that he was then under a duty to clarify.  As the CEO of the PHLX, Frucher was not required to inform the shareholders of every discussion or negotiation he had.  It would be

---

6.   It might be inferred from Plaintiff's Amended Complaint and Opposition to Summary Judgment that Frucher also made material misstatements in the lead-up to demutualization and in the months afterwards by indicating that the PHLX had no value.  However, both the Amended Complaint and the Memorandum in Opposition to Summary Judgment fail to make this claim explicitly.  Moreover, Plaintiff fails to reference any specific statements by Frucher to this effect.  Finally, no evidence has been produced and identified by Plaintiff from which a jury could conclude that these statements were false at the time they were made.

inimical to corporations, which often negotiate secretly, to impose such a duty.  Therefore, to the extent that Plaintiff's claim relies on Frucher's omissions, it is dismissed.

In sum, there are simply no facts supporting a securities fraud claim against Defendant Frucher.  Accordingly, judgment is entered in favor of Frucher and against Plaintiff on Count IV.

## IV.  CONCLUSION

For the reasons stated above, the Court grants all of Defendants' Motions for Summary Judgment.[7]  An Order consistent with this Memorandum follows.

---

7.   Also outstanding in this case are two Motions to Quash and for Protective Order, one submitted by the PHLX, Frucher, and Wallace (Docket No. 42), and the other by third parties Citadel Derivatives Group, LLC., Citigroup Financial Products, Inc., Merrill, Lynch, Pierce, Fenner & Smith, Inc., Morgan Stanley & Co., and UBS Securities, LLC (Docket No. 43).  The Court concludes that the discovery requests from which the movants seek relief are over-broad.  Under the Federal Rules of Civil Procedure, a court may quash or modify a subpoena that subjects a party to undue burden.  See Fed. R. Civ. P. 45(c)(3)(A)(iv). The movant must meet the "heavy burden of establishing that compliance with the subpoena would be 'unreasonable and oppressive.' " Small v. Provident Life and Acc. Ins. Co., No. 98-2934, 1999 WL 1128945, at *1 (E.D.Pa. Dec. 9, 1999).  Here, movants have met that burden.  Plaintiff's discovery requests were for numerous documents, many of which appeared to have no relevance and were confidential.  Movants have demonstrated good faith attempts to negotiate with Plaintiff for a narrower scope of discovery. (See Defs.' Frucher and Wallace & Nonparty PHLX's Mem Supp. Mot. Protective Order and Quash Subpoena, Ex. B (providing copies of communications between movants and Plaintiff's counsel.)  The Court finds that Plaintiff did not respond in good faith, instead refusing to negotiate any limitations. (See id.)  Therefore, the Motions to Quash and for Protective Order are granted.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


PENNMONT SECURITIES,         :         CIVIL ACTION
                                   :
          Plaintiff,         :         NO. 06-1646
                                     :
         v.                 :
                                     :
JOHN F. WALLACE,          :
MEYER FRUCHER, and      :
PASQUALE DIDONATO,     :
                                     :
         Defendants.      :

------

**<u>ORDER</u>**

AND NOW, this 26th day of March, 2008, upon consideration of Defendant DiDonato's Motion for Summary Judgment (Docket No. 61), Defendants Wallace and Frucher's Motion for Summary Judgment (Docket No. 59), Plaintiff's Answer in Opposition (Docket No. 63), Defendant DiDonato's Reply (Docket No. 65), and Defendants Wallace and Frucher's Reply (Docket No. 64), it is hereby **ORDERED** that the Defendants Motions for Summary Judgment are **GRANTED**.

It is further ordered that the Motions to Quash and for Protective order by the PHLX (Docket No. 42) and Citadel Derivatives Group, LLC., Citigroup Financial Products, Inc., Merrill, Lynch, Pierce, Fenner & Smith, Inc., Morgan Stanley & Co., and UBS Securities, LLC (Docket No. 43) are **GRANTED**.

15

Judgment is **ENTERED** in favor of Defendants DiDonato, Wallace, and Frucher, and against Plaintiff, Pennmont Securities.

This case is **CLOSED**.


BY THE COURT:


*s/ Ronald L. Buckwalter*
RONALD L. BUCKWALTER, S.J.

16